## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JOHN BENSON and
BRIAN BENSON,

                Plaintiffs,

v.                                          **ORDER**
                                            Civil File No. 17-3839 (MJD/DTS)

ANN KEMSKE and
JON KEMSKE,

                Defendants.

John Benson, <u>pro se</u>.

Brian Benson, <u>pro se</u>.

David C. McLaughlin and Jason G. Lina, Fluegel, Anderson, McLaughlin & Brutlag, Chtd., Counsel for Defendants Ann Kemske and Jon Kemske.

## I.      INTRODUCTION

The above-entitled matter comes before the Court upon the Report and Recommendation of the United States Magistrate Judge dated June 2, 2020. Defendants Ann Kemske and Jon Kemske filed objections to the Report and Recommendation regarding application of res judicata to the claims against them.

Pursuant to statute, the Court has conducted a <u>de novo</u> review upon the record of that portion of the Report and Recommendation to which Defendants have objected.  28 U.S.C. § 636(b)(1); Local Rule 72.2(b).  Based upon that review, the Court adopts in part and declines to adopt in part the Report and Recommendation dated June 2, 2020.

## II.     CONSIDERATION OF DEFENDANTS' OBJECTIONS

Plaintiffs argue that the Court should disregard Defendants' objections to the Report and Recommendation on the grounds that that they were served late. Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy of the recommended disposition, unless the court sets a different deadline."  "A party may respond to another party's objections within 14 days after being served with a copy."  Local Rule 72.2(b)(2). The Report and Recommendation was filed on CM/ECF on June 2, 2020. Defendants' objections were filed on CM/ECF on June 16, 2020, within the 14-day limit.

Plaintiffs assert that the objections were served on Plaintiff Brian Benson by U.S. Mail, arriving on June 19, 2020 in an envelope that was stamped with a Pitney Bowes postal meter stamp dated June 16, 2020.  Plaintiffs assert that,

despite the June 16 meter stamp, the envelope must have been mailed at a later

date because three days is too long for the Postal Service to deliver the mail from

Defendants' attorneys' office in Morris, Minnesota, to Brian Benson's address in

Prior Lake, Minnesota.  The issue is further muddled because Defendants

mistakenly filed an affidavit of service for the March 6, 2020 mailing of their

Reply to Brian Benson rather than the affidavit of service for the mailing of the

objections to Brian Benson.  [Docket No. 188-1]

The Court need not make a finding regarding whether the objections were

mailed on June 16, or, as Plaintiffs claim, June 17 or 18.  The deadline for

objecting to a Report and Recommendation is not jurisdictional, and thus this

Court is not barred from considering late objections.  See Vogel v. U.S. Office

Prod. Co., 258 F.3d 509, 515 (6th Cir. 2001) ("[W]here a party files objections after

[the time period allowed by rule], a district court can still consider them.");

Kruger v. Apfel, 214 F.3d 784, 786–87 (7th Cir. 2000) (noting that the time period

for filing objections "is not jurisdictional," and thus "the district court [i]s not

barred from considering the late objections").  Even if the Court were to accept

Plaintiffs' assumptions regarding the current speed of delivery of U.S. Mail in

Minnesota, the objections were, at most, two days late, and Plaintiffs do not

assert that they suffered any prejudice from the allegedly late service.  In fact,

Plaintiffs filed their response to the objections on June 23, a mere one week after

they were filed on CM/ECF and well before the deadline to file such response.

The Court finds that there was no prejudice from any possible late service on

Brian Benson.  Finally, the Court notes that "[t]he district judge may also

reconsider on his or her own any matter decided by the magistrate judge but not

objected to."  Local Rule 72.2(a)(3).  Therefore, the Court will consider

Defendants' objections and modify the Report and Recommendation with regard

to the application of res judicata in this case.

Based on the Court's review, the Court adopts the Report &

Recommendation with the exception that the Court declines to adopt Section II

of the Conclusions of Law, found at pages 10 through 15 of the Report and

Recommendation and entitled "Neither Res Judicata Nor Claim Splitting Bars

the Bensons' Fraud and Conversion Claims."  Section II is replaced with the

following analysis:

III.  **Res Judicata**

A.  **Applicable Law of Res Judicata**

North Dakota law governs the Court's res judicata analysis because "[t]he

law of the forum that rendered the first judgment controls the res judicata

analysis." <u>St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.</u>, 539 F.3d

809, 821 (8th Cir. 2008).

> Res judicata, or claim preclusion, prevents relitigation of claims that
> were raised, or could have been raised, in prior actions between the
> same parties or their privies.  Res judicata means a valid, final
> judgment is conclusive with regard to claims raised, or claims that
> could have been raised, as to the parties and their privies in future
> actions.

<u>Fredericks v. Vogel Law Firm</u>, 946 N.W.2d 507, 510-11 (N.D. 2020) (citations

omitted).

> Res judicata applies even though the subsequent claims may be
> based on a different legal theory.  If the subsequent claims are based
> upon the identical factual situation as the claims in the earlier action,
> then they should have been raised in the earlier action.  It does not
> matter that the substantive issues were not directly decided in the
> earlier action, the key is that they were capable of being, and should
> have been, raised as part of the earlier action.

<u>Fredericks</u>, 946 N.W.2d at 511 (citing <u>Littlefield v. Union State Bank, Hazen,</u>

<u>N.D.</u>, 500 N.W.2d 881, 884 (N.D. 1993)).  With regard to whether a claim "should

have been raised" in the earlier action, "if the subsequent claims are based upon

the identical factual situation as the claims in the prior proceeding, then they

should have been raised in the prior proceeding."  <u>Littlefield</u>, 500 N.W.2d at 884

(citations omitted).

5

> [A] judgment on the merits in the first action between the same
> parties constitutes a bar to the subsequent action based upon the
> same claim or claims or cause of action, not only as to matters in
> issue but as to all matters essentially connected with the subject of
> the action which might have been litigated in the first action.

Fredericks, 946 N.W.2d at 511 (citation omitted).

"A party with a single cause of action generally may not split that cause of action and maintain several lawsuits for different parts of the action.  Res judicata is premised upon the prohibition against splitting a cause of action."

Fredericks, 946 N.W.2d at 512 (citations omitted).

> Res judicata under North Dakota law has four elements:
>
> 1. A final decision on the merits in the first action by a court of
> competent jurisdiction;
> 2. The second action involves the same parties, or their privies, as
> the first;
> 3. The second action raises an issue actually litigated or which
> should have been litigated in the first action;
> 4. An identity of the causes of action[.]

Mo. Breaks, LLC v. Burns, 791 N.W.2d 33, 39 (N.D. 2010) (citing Sanders

Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992)).

### B.    Final Decision on the Merits

As noted in the Report and Recommendation, in a conclusion to which no

party objected, there was a final decision on the merits in the North Dakota

Action, which was affirmed by the North Dakota Supreme Court.

6

### C.   Same Parties

As noted in the Report and Recommendation, in a conclusion to which no party objected, all parties to this federal action participated in the North Dakota Action: Ann Kemske, Jon Kemske, John Benson, and Brian Benson were all parties to the North Dakota Action.

### D.   Issue Was or Could Have Been Raised

"Under res judicata claim preclusion, a judgment in a prior action is conclusive 'as to all claims which, <u>under the rules</u>, might have been put in issue in the prior trial." <u>Riverwood Commer. Park, LLC v. Std. Oil Co.</u>, 729 N.W.2d 101, 108 (N.D. 2007) (citation omitted).

The North Dakota Supreme Court has

distinguished collateral estoppel, or issue preclusion, and res judicata, or claim preclusion, in part on the basis of whether an issue was actually litigated in a prior proceeding, or whether the issue was raised **<u>or could have been raised</u>** in the prior proceeding.

<u>Cridland v. N.D. Workers Comp. Bureau</u>, 571 N.W.2d 351, 354 (N.D. 1997) (emphasis added).  Under North Dakota law, "if the subsequent claims are based upon the identical factual situation as the claims in the prior proceeding, then they should have been raised in the prior proceeding." <u>Littlefield</u>, 500 N.W.2d at 884 (citations omitted).

7

The parties in the North Dakota Action litigated the same set of facts that give rise to Plaintiffs' current claims for fraud, conversion, and declaratory judgment against the Kemskes: the ownership of the same mineral rights and the validity and legality of the various transfers and deeds related to those mineral rights, including the Kemskes' 1990 deed to Thomas Benson recorded in 2012, the statement of claim of mineral interest executed by Thomas Benson and recorded in 2005, and the 2010 deed from Ann Kemske to Family Tree Corporation, Inc. ("Family Tree").  See Desert Partners IV, L.P. v. Benson, 875 N.W.2d 510, 514-515 (N.D. 2016).

Plaintiffs' current claims against Defendants are based on the allegation that Defendants "conveyed the same mineral interests more than one time, the second time a fraudulent transaction as they no longer held any right title or interest in the property to convey."  (Am. Compl. ¶ 2.)  "Plaintiffs further allege that Defendants' actions resulted in a conversion of Plaintiffs['] property."  (Id. ¶ 3.)  Plaintiffs assert Count 1: Fraud, based on the allegation that "the fraudulent conveyance by Defendants Kemskes deprived [Plaintiffs] of ownership of oil and gas royalty interests;" Count 2: Conversion of Property, based on the allegation that the Kemskes' "actions constitute a conversion of [Plaintiffs'] personal

8

property in mineral royalties;" and Count 3: Declaratory Judgment, seeking a declaration that "the subject property is owned as an undivided interest, and that any attempted conveyance the consent of all owners is void as a matter of law." (Am. Compl. ¶¶ 33, 38, 45.)

John and Brian Benson set forth substantially the same allegations of fraud against Ann Kemske in their Answer signed on February 22, 2013 and filed in the North Dakota Action.  ([Docket No. 171-2] Lina Aff., Ex. C, Answer and Counterclaims at 4 ¶ 5 ("That the deed from Ann Kemske to Family Tree Corporation was not a legal contract due to the formation requirement of a meeting of the minds insofar that neither party was aware she did not own the property; either the 160 acres in dispute herein and/or the remaining 1,560 acres listed in the deed they attempted to convey absent of course intentional fraud.").) They also asserted that Ann and Jon Kemske had nothing to convey in 2010 after they conveyed all of their interest to Thomas Benson in 1990.  (Id. at 5 ¶ 8.)  John and Brian Benson asserted: "In fact after Ann Kemske sold/conveyed the subject property twice, as described herein, she leased it to Petrogulf Corporation on March 5, 2012 long after the well had been drilled and Petrogulf was informed that there was no interest to lease by my brother . . . .  It appears that Ann

Kemske would sign anything with anyone whom would give her a check . . ."

(Id. at 10 ¶ X.)  And, in the North Dakota Action, the North Dakota Supreme

Court explicitly held that the 1990 deed was valid between the parties to that

deed and those with notice:

> Here the Kemskes executed a deed conveying and quitclaiming all
> their right, title, and interest in the 160 acres to Thomas Benson in
> 1990, but that deed was not recorded until 2012.  That deed is valid
> between the parties to the instrument and those with notice.

Desert Partners IV, L.P. v. Benson, 875 N.W.2d 510, 514–15 (N.D. 2016).

Ultimately, the North Dakota Supreme Court affirmed the trial court's judgment

awarding Desert Partners and Family Tree ownership of the mineral rights,

Desert Partners IV, L.P. v. Benson, 921 N.W.2d 444, 447 (N.D. 2019), deciding the

very issue – ownership of the subject mineral interest – that Plaintiffs now seek to

have this Court decide to the contrary in their claim for declaratory judgment.

There was no reason that Plaintiffs could not have asserted these same

claims against the Kemskes in the North Dakota Action.  There was no statutory

bar to Plaintiffs asserting these claims against the Kemskes.  See N.D.C.C. § 32-

17-08.  Cf. Riverwood Commer. Park, LLC v. Std. Oil Co., 729 N.W.2d 101, 108

(N.D. 2007) (holding that "res judicata claim preclusion" does not bar claims

"when a statute explicitly prohibits inclusion of additional claims in the original

10

action").  In fact, the transcript from the North Dakota Action reveals that, on

February 3, 2017,  John Benson explicitly preserved his right to amend his

pleadings to assert claims against the Kemskes in the North Dakota Action.  At

that time, the Kemskes attempted to extricate themselves from the North Dakota

action, explaining that the only reason they were "still involved in this case – is

because we don't want anybody to amend the pleadings.  Right now there's no

relief requested against Kemskes.  And that's the only reason we're here.  That's

the only reason we're participating in this case, to make sure somebody doesn't

try to amend their pleadings at the date of trial." ([Docket No. 178] McLaughlin

Aff., Ex. A, Feb. 3, 2017, N.D. Action Tr. 26-27.)  John Benson responded: "I am

not going to agree that I'm not going to amend any pleadings.  I can amend them

up until the time of trial, and I'm going to reserve that right."  (Id. 28.)  This

exchange highlights that not only could John and Brian Benson have asserted the

current claims against the Kemskes in the North Dakota Action, but also, John

Benson knew that he could do so and affirmatively protected his right to do so

until the trial occurred in that case on October 3, 2017.  (He filed the current

federal lawsuit on August 18, 2017.)  The fact that the Bensons ultimately decided

not to assert claims against the Kemskes in the North Dakota Action is irrelevant.

Cf. Fredericks, 946 N.W.2d at 511-12 (holding res judicata applied when "the district court in the first action authorized [the current plaintiff] to bring additional claims against [current defendants]" but current plaintiff "did not bring those claims until approximately one month before trial, which the court struck as untimely," because "[a]lthough untimely, [current plaintiff's] were capable of being raised in the earlier action").

"By the time they filed their [Answer and Counterclaim] in [the North Dakota Action] in [February 2013], the [Bensons] were aware of all of the material facts alleged in this action, and there was no procedural impediment to the [Bensons] bringing their [fraud, declaratory judgment,] and conversion claims against [the Kemskes] in [the North Dakota Action]." Finstad v. Beresford Bancorporation, Inc., 831 F.3d 1009, 1014 (8th Cir. 2016). "But the [Bensons] elected not to bring the [fraud, declaratory judgment,] and conversion claims in [the North Dakota Action], and they are barred from pursuing them in a second action." Id.

### E.    Identity of Causes of Action

"Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" Sanders

Confectionery Prods. v. Heller Fin., Inc., 973 F.2d 474, 484 (6th Cir. 1992), cited in

Mo. Breaks, LLC, 791 N.W.2d at 39.

The North Dakota Action and the current lawsuit against the Kemskes are

based on the "same nucleus of operative facts:" the ownership of the same

mineral rights and the validity and legality of the various transfers and deeds

related to those mineral rights, including the Kemskes' 1990 deed to Thomas

Benson, the statement of claim of mineral interest executed by Thomas Benson

and recorded in 2005, and the 2010 deed from Ann Kemske to Family Tree.  See

Orlick v. Grand Forks Hous. Auth., No. 2:14-CV-54, 2015 WL 10936736, at *4

(D.N.D. Mar. 19, 2015) ("Res judicata bars a second lawsuit based not only on

claims actually raised in earlier litigation, but also on claims which could have

been raised in the earlier litigation.  Although [the plaintiff's] current complaint

references statutes and legal theories not raised in prior litigation, his claims are

based on the same nucleus of operative facts as were his prior claims."), aff'd, 616

F. App'x 218 (8th Cir. 2015).  Now, the Bensons assert that the Kemskes

committed fraud and conversion when Ann Kemske transferred her interest in

the property to Thomas Benson in 1990 and then transferred that same interest to

Family Tree in 2010.  Here, the facts underlying Plaintiffs' fraud, conversion, and

13

declaratory judgment claims against the Kemskes and the evidence necessary to sustain those claims were part of the North Dakota Action.  Cf. Rutherford v. Kessel, 560 F.3d 874, 880–81 (8th Cir. 2009) ("The issue Julie wants to adjudicate in her quiet title action concerns her alleged ownership in the three condominium properties.  That is the same issue adjudicated in the state trial court's order declaring null and void the transfers between Robert to Julie.  Both suits would involve the validity of the unilateral conveyance Julie constructed in the midst of the personal injury lawsuit between Kessel and her brother.  This is precisely the type of collateral attack upon a prior court's decision which the doctrine of res judicata bars.").

### F.    Whether Application of Res Judicata Would Create an Injustice

Application of res judicata in this case would not work an injustice. Plaintiffs have had ample opportunity to litigate their claims against the Kemskes.  The North Dakota Action was a long-running action, in which Plaintiffs explicitly reserved their right to amend their pleadings to assert claims against the Kemskes until the eve of trial, which occurred after Plaintiffs filed this federal lawsuit.  Plaintiff John Benson filed the current lawsuit in an attempt to enjoin the North Dakota trial.  This Court denied that motion, yet Plaintiffs

still did not exercise their opportunity to assert the current claims against the

Kemskes in the North Dakota Action.

> Courts will not permit a litigant to try a part of his case and then, if
> he is disappointed with the outcome of the action, to have another
> day in court simply by alleging new claims or making a new
> demand for relief, when he could have made such demand in the
> prior action.  In such case, the judgment in the first action is
> conclusive between the same parties as to all matters tried in that
> action or which, under the rules, might have been put in issue in the
> action previously tried, in which judgment was entered and from
> which judgment no appeal was taken.

Perdue v. Knudson, 179 N.W.2d 416, 421 (N.D. 1970).

Application of res judicata in this case furthers the policy goals of res

judicata:

> A party who brings some claims into one court without seeking
> complete relief and brings some related claims in another court, or
> who presents some issues in one court proceeding and reserves
> others to raise them in another court, invites wasteful expense and
> delay.  Application of the law of res judicata conserves scarce
> judicial resources and avoids wasteful expense and delay.

Cridland v. N.D. Workers Comp. Bureau, 571 N.W.2d 351, 354 (N.D. 1997)

(citation omitted).

### G.   Declaratory Relief

As noted in the Report and Recommendation, the Bensons' third claim for

relief against the Kemskes seeks a declaration that "the subject property [the 160

15

acres] is owned as an undivided interest, and that any attempt at conveyance

without the consent of all owners [e.g., the 2010 deed] is void as a matter of law."

(Am. Compl. ¶ 45.)  This claim for declaratory relief was actually litigated in the

North Dakota Action.  The requested declaration directly conflicts with the

North Dakota judgment and is clearly barred by res judicata.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1. The Court **ADOPTS IN PART** and **MODIFIES IN PART** the Report
   and Recommendation dated June 2, 2020 [Docket No. 185].

2. Defendants' Motion to Dismiss [Docket No. 170] is **GRANTED**
   and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   August 18, 2020                    s/ Michael J. Davis
                                            Michael J. Davis
                                            United States District Court